UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICARDO SUDLOW,** | Civil Action No. 14-5007 (SDW) |
| **Petitioner,** | |
| v. | **OPINION** |
| **N.J. DEPARTMENT OF CORRECTIONS, et al.,** | |
| **Respondents.** | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Ricardo Sudlow ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction (ECF No. 1). The Government filed a response to the petition. (ECF No. 8). Petitioner did not file a reply. For the following reasons, this Court will deny the petition and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In its opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey, Appellate Division, summarized the factual background of this matter as follows:

> Following a three-day trial, a jury found [Petitioner] guilty of second-degree eluding an officer [in violation of N.J. Stat. Ann. §] 2C:29-2(b); third-degree aggravated assault on a police officer [in violation of N.J. Stat. Ann. §] 2C:12-1(b)(5); third-degree receiving stolen property [in violation of N.J. Stat. Ann. §] 2C:20-7; and fourth-degree resisting arrest [in violation of N.J. Stat. Ann. §] 2C:29-2(a). The jury acquitted [Petitioner] of second degree aggravated assault while attempting to elude [in violation of N.J. Stat. Ann. §] 2C:12-1(b)(6), and third-degree criminal mischief [in violation of N.J. Stat. Ann. §] 2C:173(a)(1).

1

> . . . .
>
> The record revealed that on June 28, 2009, an unidentified man carjacked an Acura at gunpoint from the driveway of the owner's home in New York. [The car owner testified that Petitioner] was not the carjacker.
>
> Later that day, Mountainside Police Officer Shaun Bendik observed [Petitioner] driving the stolen Acura in a residential neighborhood under construction in Mountainside. The officer became suspicious after [Petitioner] parked the vehicle in the unpaved driveway of a newly-constructed, unoccupied home. He shined a spotlight into the vehicle and saw [Petitioner] sitting in the vehicle alone. [Petitioner] then backed the Acura out of the driveway and the officer activated the lights on his patrol car to signal [Petitioner] to stop the vehicle. Instead of stopping, [Petitioner] drove the vehicle in the direction of nearby Route 22.
>
> As [Petitioner] merged onto the highway, Mountainside Police Officer Jeffrey Stinner joined Bendik in the pursuit. [Petitioner] drove the vehicle erratically at an extremely high rate of speed, weaving in and out of traffic. Mountainside Police Corporal Kenneth Capobianco was driving nearby in a marked pickup truck when he heard police radio transmissions about the chase. He positioned his truck in front of the Acura and drove at a low rate of speed. The Acura collided into the rear of the patrol vehicle, flipped over, and eventually came to a stop. [Petitioner] fled, hiding nearby until the police found and arrested him.
>
> At trial, the three police officers involved identified [Petitioner] as the driver and sole occupant of the stolen Acura. [Petitioner] testified at trial that his friend Dennis Webster was the driver of the Acura and he was just a passenger. According to [Petitioner], because he refused to tell the . . . police the name of the driver, the police falsely testified that he was the only person in the Acura.

(Document 5 attached to ECF No. 8 at 1-4).

Following the jury verdict, Petitioner was sentenced to eight years imprisonment with a four year parole disqualifier for the eluding charge, a four year imprisonment term on the aggravated assault count to run concurrently to the eluding sentence, a four year term on the stolen property count to run consecutively to the eluding term, and a twelve month term of imprisonment

to run concurrently with his other sentences.  (Document 5 attached to ECF No. 8 at 2).  Petitioner appealed, and the Appellate Division affirmed his conviction and sentence by way of an opinion dated June 18, 2013.  (*Id.*).  The New Jersey Supreme Court thereafter denied certification in July 2014.  (Document 8 attached to ECF No. 8).  This habeas petition followed.

## II.  DISCUSSION

### A.  Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012).  Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*  Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B. Analysis**

**1. Petitioner's Carjacking Testimony Claim**

In his first claim, Petitioner asserts that the admission of testimony from the owner of the Acura that she had been carjacked at gunpoint denied him a fair trial because that testimony was "highly and unduly prejudicial."  (ECF No. 1 at 3).  Initially, the Court notes that Petitioner here seeks to challenge an evidentiary decision made by the state courts.  Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), the admissibility of evidence is generally a question of state law which is not cognizable in habeas corpus.  *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence").  A petitioner may therefore only establish his entitlement to habeas relief based on an evidentiary decision by showing that the admission of the evidence in question denied him Due Process

4

insomuch as he was deprived of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of an evidentiary decision when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

In his petition, Petitioner contends that the car-owner's testimony that her Acura had been stolen during a gun-point carjacking prior to Petitioner's driving of the car should not have been admitted because it was unduly prejudicial. Prejudice, however, is not the sole determining factor in admissibility determinations. Under New Jersey evidentiary rules, relevant, non-cumulative evidence should be excluded only where "its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading [of] the jury." *State v. Rose*, 19 A.3d 985, 1007-08 (N.J. 2011). Evidence is relevant where it has a tendency to prove or disprove any act of consequence to the determination of a petitioner's case, and a fact will therefore be relevant where there is a logical connection between the proffered evidence and a fact in issue. N.J. R. Evid. 401. While evidence of other crimes or wrongs is generally not admissible to prove that the person charged acted in conformity therewith, such evidence is admissible under the New Jersey rules for other purposes, such as where it is probative of motive, opportunity, intent,

5

preparation, plan, knowledge, identity or absence of mistake or accident where those matters are relevant to the issues in dispute at trial. *Rose*, 19 A.3d at 1008. Where the alleged other crimes evidence bears on facts which are intrinsic to the charged crime, however, that evidence need only meet the balancing test of New Jersey Rule of Evidence 403 to be admissible, and the question of the purpose for its admission as improper other crimes evidence need not be addressed. *Id.* Evidence is considered intrinsic where it either directly proves the charged offense, or is committed contemporaneously with the charged crime and facilitates the commission of that crime. *Id.* at 1009-10 (quoting *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010)).

In this matter, Petitioner attacks the admission of the testimony of the car owner that her car was stolen from her at gunpoint. One of the crimes with which Petitioner was charged, and of which he was ultimately convicted, in this matter was receipt of stolen property –specifically the stolen car. The State was therefore required to prove in this matter that the car in question was stolen. *See State v. Hodde*, 858 A.2d 1126, 1128-29 (N.J. 2004); (*see also* Document 5 attached to ECF No. 8 at 7). Thus, that the Acura was stolen was more than simply relevant in Petitioner's trial – that fact was directly at issue and an element of one of the crimes with which Petitioner was charged. Because the stolen nature of the vehicle was highly relevant and probative of guilt, its probative value clearly outweighed any prejudice resulting from the fact that Petitioner's possession of the car may have suggested he had some relationship with the carjacker. Thus, the admission of the car-jacking evidence was clearly proper under New Jersey evidential rules, and nothing in the record suggests that the admission of this evidence denied Petitioner a fair trial.[1]

---

[1] This is especially true given the fact that the trial court gave a specific curative instruction reiterating that Petitioner was not the carjacker and that the jury was not permitted to consider the carjacking for any reason other than to establish that the care was in fact stolen. (*See* Document 5 attached to ECF No. 8 at 6). That defense counsel did not object to the testimony, and in fact elicited further testimony on cross-examination regarding the nature of the carjacking committed

Likewise, to the extent that Petitioner contends that he was denied a fair trial because the carjacking testimony consisted of improper other crimes evidence, his contention is without merit. While the carjacking did involve another crime committed by a third party, that evidence was admitted not to suggest any propensity for criminality on the part of Petitioner, but simply to establish one element of the charged offense – that the car in question had in fact been stolen. Thus, as the Appellate Division concluded, the fact that this other individual stole the car from the owner was admitted precisely because it proved one element of a charged offense and was therefore intrinsic to that charged crime. *See Rose*, 19 A.3d at 1009-10; *see also Green*, 617 F.3d at 248-49. Because that evidence was intrinsic to the crime charged, and was not admitted to show Petitioner's propensity for criminal activity, it does not qualify as improper other crimes testimony, and was properly admitted at Petitioner's trial. *Rose*, 19 A.3d at 1009-10; *see also Green*, 617 F.3d at 248-49. The admission of this testimony therefore did not deny Petitioner his right to a fair trial, and these evidentiary decisions of the state courts cannot form the basis for habeas relief for Petitioner. *Scott*, 2013 WL 4537651 at *9. Petitioner's claim that the carjacking evidence denied him a fair trial is therefore without merit and must be denied.

**2. Petitioner's Claim that the Prosecutor Violated his Right to Remain Silent**

In his next claim, Petitioner contends that the prosecutor in his criminal trial denied him his right to remain silent by questioning why he did not provide the identity of the person he alleges was the driver on the night of the Acura car chase to the police at questioning. Generally, it is improper for a prosecutor to comment on a criminal defendant's post-arrest silence following

---

by an unknown third party further suggests that counsel did not feel that this evidence denied Petitioner a fair trial. (*Id.* at 6-8).

*Miranda* warnings because such warnings carry the "implicit assurance" that an arrestee's right to remain silent will not be used against him. *United States v. Edwards*, 792 F.3d 355, 357 (3d Cir. 2015); *see also Doyle v. Ohio*, 426 U.S. 610 (1976). A prosecutor therefore violates Due Process where he causes "the jury to draw an impermissible inference of guilt from a defendant's post-arrest silence." *Edwards*, 792 F.3d at 358 (quoting *Gov't of the V.I. v. Martinez*, 620 F.3d 321, 335 (3d Cir. 2010). Because such a violation grows out of the implicit assurance of the non-punitive nature of the right to remain silent, however, not all comments on silence will violate Due Process. *Gov't of the V.I. v. Davis*, 561 F.3d 159, 164 (3d Cir. 2009). One such situation where a prosecutor may comment on post-*Miranda* silence is where a defendant gives the impression that he has provided cooperation with the Government when he in fact has not. *Doyle*, 426 U.S. at 619 n. 11. Likewise, violations of the *Doyle* prohibition on comment on post-*Miranda* warning silence are subject to harmless error analysis, and will not warrant habeas relief unless the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631-38 (1993).

In this matter, Petitioner testified that he had not been the driver during the car chase, but that a Dennis Webster had instead been driving the stolen Acura. (*See* Document 13 attached to ECF No. 8 at 28). On direct examination, Petitioner testified at length about the numerous interviews he had with police from various departments, asserting that he had refused to give them any information regarding Webster. (*Id.* at 8-12). During cross examination, the following exchange occurred regarding that issue:

> [The State]: . . . you were brought back to the Mountainside Police Department, correct?
>
> [Petitioner]: Yes.
>
> [The State]: And they asked you again [about the alleged other guy]?

8

[Petitioner]: No.

[The State]: But somebody else asked you?

[Petitioner]: New York [detectives].

[The State]: Okay. And in New York you . . . weren't going to give your friend up, right?

[Petitioner]: No.

[The State]: You were going to protect him?

[Petitioner]: I tried.

[The State]: Okay. You tried. You succeeded. You . . . never mentioned his name, correct?

[Petitioner]: To New York detectives –

[The State]: Yes.

[Petitioner]: – eventually I did, yes.

[The State]: You did?

[Petitioner]: Yes.

[The State asked who he told about Webster, to which Petitioner responded that he told two detectives from Nassau County.]

[The State]: Did you . . . talk [about] this with your counsel?

[Petitioner]: About what?

[The State]: About [your telling the New York detectives about Webster]?

[Petitioner]: I told him [they] came and interviewed me. Yeah, I did.

[The State]: Ok.

. . . .

9

>[Petitioner]: Yes, I did. I did. I told him they came and interviewed me and he said, well, maybe that's the reason they took three days to charge me.
>
>[The State]: And . . . you've been in the county jail . . . for the past two years – withdraw that, Your Honor. The two years that this investigation has been going on . . . . okay, and people have been asking you questions that you knew you were going to come to trial and you knew that you're in trouble already –
>
>[Defense Counsel]: Objection, your Honor.

(Document 13 attached to ECF No. 8 at 29-30). Following the objection, the Court held a sidebar at which defense counsel argued that this amounted to improper comment on Petitioner's silence during the preceding years of the investigation, suggesting that Petitioner was obligated to reveal Webster sooner. (*Id.* at 30). That objection went undecided as the court then adjourned for the day, but the prosecutor abandoned that line of questioning upon the resumption of trial. (Document 14 attached to ECF No. 8).

Even if this Court were to assume that this exchange represents improper comment by the State on Petitioner's right to remain silent, a point which is not entirely clear in light of the fact that it was Petitioner who brought the issue of his interrogations into question during his direct testimony and Petitioner who volunteered that he later told police about Webster on cross examination, it is clear that these comments were ultimately harmless. This brief exchange came after numerous police officers had already testified that Petitioner was the driver and sole occupant of the stolen Acura throughout the police chase, that some of them had seen Petitioner flee the scene of the accident, and that Petitioner had been found injured shortly thereafter. In light of the significant amount of eye-witness testimony identifying Petitioner as the sole occupant of the Acura during the chase, the fact that Petitioner himself brought his interrogations with police into evidence on direct examination, and the fact that the State never finished nor reiterated its question

which would have sought to elicit why Petitioner had not revealed Webster sooner, it cannot be said that the brief exchange between the prosecutor and Petitioner regarding his eventual decision to reveal Webster's existence to New York detectives had a substantial and injurious effect upon the outcome of Petitioner's jury trial. Any harm this brief exchange could have done Petitioner was minimal given the strength of the testimony from the various officers arrayed against Petitioner and the fact that the State was prevented from actually asking the allegedly damaging question by defense counsel's objection and dropped that line of questioning upon the resumption of testimony. It is thus clear that Petitioner suffered no substantial and injurious effect from this exchange, and as such any error that may have resulted from the admission of such testimony was harmless and is insufficient to warrant habeas relief. *Brecht*, 507 U.S. at 638. Petitioner's second claim therefore must be denied.

**3. Petitioner's Claim that the Prosecutor Improperly Bolstered the Credibility of the State's Witnesses**

In his final claim, Petitioner contends that the prosecutor improperly bolstered the credibility of the police officer witnesses both during his cross examination of Petitioner and during his summation. Specifically, Petitioner challenges the following exchange from his cross-examination which resulted from Petitioner's testimony on direct that the officers at trial claimed that he was the driver and sole occupant of the Acura even though he claimed he overheard them at the scene speak about another passenger or driver:

> [The State]: [Petitioner], you heard the testimony of a number of police officers who were in here today, right?
>
> [Petitioner]: Yes, I did.
>
> [The State]: They're all lying, right?

11

> [Defense counsel]: Your Honor –
>
> [Petitioner]: I'm not saying –
>
> [Defense Counsel]: Can we be heard at sidebar, your Honor?
>
> [Petitioner]: – but they're mistaken about a lot of things.
>
> [The Court]: Okay.
>
> [Defense Counsel]: Objection.
>
> [The Court]: Okay. That's sustained. That's too broad a question, okay.
>
> [The prosecutor then ceased this line of questioning and moved on to other areas.]

(Document 13 attached to ECF No. 8 at 14).

Petitioner also takes issue with the following comments made by the prosecutor during his closing arguments in response to lengthy attacks on the credibility of the testifying police officers by defense counsel and made after the prosecutor discussed with the jury the essentially consistent testimony of the various officers and the conflicting testimony of Petitioner:

> And when you listen to th[e] transmissions [made by the various officers during the car chase] the biggest thing you should get out of it is the fact that they're always talking about he, him, singular. Not one time on that transmission are they talking about two people, them, they, never happens. That is good evidence.
>
> I would recommend you take it in there and listen to it because it will show you that they were never looking for [more than] one person, they always were looking for one person, and listen to the end part. The end part they talk about [calling a] police helicopter and as soon as they found [Petitioner] they cancelled it.
>
> Why would you do that if you were looking for two people? Once again, it's going to come down to credibility. It's going to come down to who you think is telling the truth. The State [posits that] the police are telling the truth.

> . . . .
>
> And I really think the most important thing that [you] have to do is really . . . to judge the credibility of [Petitioner] against [the credibility of] the cops. I know I've said that, but I think that's really what it comes down to.
>
> I think these cops are credible. [The] State contends that [Petitioner] had a motive for . . . eluding [the police]. He had the means to get away, a fast stolen car.

(Document 15 attached to ECF No. 8 at 9-10). No objection was made to these comments. (*Id.*). It should also be noted in relation to these comments that, during the jury instruction, the trial judge specifically advised the jury that they, and not counsel, were to judge the credibility of the witnesses, and that the arguments, comments, openings, closings, and other remarks of counsel were not evidence and "must not be treated as such." (Document 15 attached to ECF No. 8 at 12-13).

Petitioner contends that these comments, coupled with the question regarding the truthfulness of the police, amounts to prosecutorial misconduct severe enough to warrant the reversal of his conviction. Turning first to the issue with the State asking Petitioner whether the police were lying, the Court notes that the various circuit courts are generally in agreement that it is improper for a prosecutor to question a criminal defendant regarding the credibility of other witnesses, which is instead the sole province of the jury. *See, e.g., United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006). As the Supreme Court has yet to speak on the issue, however, a failure to apply this rule by the state courts cannot be said to be contrary to federal law as established in the holdings of the United States Supreme Court, and would therefore not constitute grounds for habeas relief even if Petitioner could show that the state courts disregarded the issue. *See, e.g., Burns v. Warren*, No. 13-1929, 2016 WL 1117946, at *42 n. 22 (D.N.J. Mar. 22, 2016). Even if such a claim could warrant habeas relief, the Third Circuit has held that such a claim will

not warrant relief even on direct review absent the trial court permitting such a question over a direct objection and resulting prejudice to the petitioner. *Harris*, 471 F.3d at 511-12. In this matter, although the State did ask an arguably improper question regarding Petitioner's opinion about the veracity of the police officers, defense counsel objected to that comment and the trial court upheld that objection, preventing the prosecution from further pursuing that line of questioning. Likewise, because of the brief nature of the question, the trial court's decision to sustain the objection, and the jury instruction which specifically informed the jury that determinations of credibility were for the jury and not the prosecutor or Petitioner to make, it is clear that Petitioner suffered no substantial and injurious effect from the question, and that any prosecutorial misconduct this question may represent was ultimately harmless and is therefore insufficient to warrant habeas relief. *Id.*; *Brecht*, 507 U.S. at 638.

Petitioner's claim regarding the State's summation is similarly unavailing. Because a prosecutor's duty is to see that justice is done rather than to secure convictions, prosecutors are bound to "refrain from [the use of] improper methods calculated to produce a wrongful conviction" and thus, while a prosecutor "may strike hard blows [during his summation], he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016). A criminal conviction, however, "is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Harris*, 471 F.3d at 512 (quoting *United States v. Young*, 470 U.S. 1, 11 (1985). Thus, a prosecutor's improper comments during summation will only warrant relief where those comments "so infected the trial with unfairness as to make the resulting conviction a denial

14

of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *see also Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012).

While this general framework, which was applied by the state courts here, applies to all claims of prosecutorial misconduct at summation, one more specific type of prosecutorial misconduct is relevant here – improper vouching. As the Third Circuit has explained,

> A prosecutor's vouching for the credibility of a government witness raises two concerns: (1) such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and (2) the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.
>
> . . . .
>
> Our case law indicates that to find vouching two criteria must be met: (1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge or other information not contained in the record. Thus, it is not enough for a defendant . . . to assert that the prosecutor assured the jury that a witness' testimony was credible. The defendant must be able to identify as the basis for that comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record. It follows that where a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching. Likewise, prosecutorial comment that points to a lack of evidence in the record which supports a defendant's argument that the witness is not credible is proper so long as the comment does not constitute an assurance by the prosecutor that the witness is credible.

*United States v. Walker*, 155 F.3d 180, 184, 187 (3d Cir. 1998); *see also Harris*, 471 F.3d at 512; *United States v. Lore*, 430 F.3d 190, 211-12 (3d Cir. 2005).

In this matter, the prosecution made one statement which, at least arguably could be said to constitute improper vouching. While the vast majority of the prosecutor's argument in this case was proper comment made in response to defense counsel's attacks on the credibility of the testifying police officers, the prosecutor during summation did at one point make a statement of personal opinion regarding the credibility of the police officers. Most of the comments made by the prosecutor attesting to the credibility of the officers would not constitute vouching for the simple reason that although the prosecutor suggested that the officers were credible, he did so based entirely on the record – the consistency of the officers' testimony, the consistency of that testimony with the recorded radio record from the car chase and aftermath, and the cancelling of the helicopter once Petitioner, and only Petitioner, was found. When the prosecutor made a blanket statement of personal opinion, however, by simply asserting that he believed the officers were credible, it was not clear whether this assertion arose out of the record evidence he had summarized or represented his opinion based on outside knowledge. Thus, the prosecutor's statement of personal opinion presents a borderline case of improper vouching.

Even given that conclusion, however, it does not follow that Petitioner is entitled to relief for exactly the reasons given by the Appellate Division on direct appeal – the record is absent of any evidence suggesting that this one improper comment, surrounded as it was by fair comment on the evidence and its credibility ramifications, in any way prejudiced Petitioner. As the Appellate Division noted (*see* Document 5 attached to ECF No. 8 at 16-18), there was no objection to this comment by the defense, suggesting that defense counsel doubted that the statement was so prejudicial as to warrant an objection or request for a limiting instruction. Likewise, because this comment was made amidst a review of the evidence which suggested that the officers were credible, the more natural conclusion for the jury to reach would have been that this expression of

opinion was based on the trial evidence the prosecutor had just finished summarizing rather than any outside information that went unmentioned during summation. Ultimately, the evidence of Petitioner's guilt at trial was strong – including as it did the consistent testimony of several police officers involved in the chase all of whom testified to seeing only Petitioner inside of and leaving the stolen Acura, which was in turn buttressed by the consistent radio recordings directly referred to by the State as well as Petitioner's injuries from the crash, countered only by Petitioner's own testimony. Thus, viewing the evidence in its entirety and the prosecutor's comments in the context of both summations, it is clear that the prosecutor's lone arguably improper comment did not prejudice Petitioner, did not have a substantial and injurious effect upon the outcome of the jury's deliberations, and certainly cannot be said to have rendered Petitioner's trial unfair. As such, any impropriety in the comments of the prosecutor are insufficient to warrant habeas relief, s*ee Darden*, 477 U.S. at 181; *Harris*, 471 F.3d at 512, and Petitioner's habeas petition must therefore be denied in its entirety.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because jurists of reason would not disagree with this Court's conclusion that Petitioner's claims

are without merit, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further.  As a result, this Court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Petitioner's petition for a writ of habeas corpus (ECF No. 1) is DENIED and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.

Dated: March 20, 2017                                                      *s/ Susan D. Wigenton*
                                                                          Hon. Susan D. Wigenton,
                                                                          United States District Judge